Eleanor G. BIGGS

v.

**PUBLIC SERVICE COORDINATED TRANSPORT, Appellant**

v.

**Robert WASHINGTON Third-Party Defendant.**

No. 13079.

United States Court of Appeals Third Circuit.

Argued April 21, 1960.

Decided July 5, 1960.

Rehearing Denied July 25, 1960.

**312**

Joseph Head, Philadelphia, Pa. (Swartz, Campbell & Henry, Philadelphia, Pa., on the brief) for appellant.

A. Leon Higginbotham, Jr., Philadelphia, Pa., Norris, Green, Harris & Higginbotham, by William H. Brown, III, Philadelphia, Pa., for appellee.

Norman Paul Harvey, Philadelphia, Pa. (John J. McDevitt, 3rd, Philadelphia, Pa., on the brief), for third-party defendant.

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This is a suit for personal injuries and property damage sustained by plaintiff when her car, driven by a man named Robert Washington, collided with a bus owned and operated by the defendant. Plaintiff was a passenger in the car. The accident took place April 2, 1956, on the Camden Plaza side of the Benjamin Franklin Bridge. This area is just below the New Jersey exit of the bridge which runs from Philadelphia to Camden. In the accident the plaintiff received substantial injuries. The amount of the damages is not questioned upon this appeal. The driver of the plaintiff's car, Robert Washington, was joined as a third-party defendant; he was represented at the trial by independent counsel. The jury returned a verdict in favor of the plaintiff against the defendant and also found that Washington was not negligent. The defendant appeals.

The first ground for the defendant's appeal is an alleged violation of the Fifth and Seventh Amendments of the Constitution of the United States. This alleged constitutional infringement is based upon what took place some three months following the trial. Upon plaintiff's motion, and ex parte, the record was opened to permit the introduction of a certificate signed by the New Jersey Secretary of State showing the defendant's New Jersey citizenship. In spite of the fact that the certificate states that which the defendant does not deny, it is nevertheless argued that such an ex parte opening of the record is a denial of defendant's constitutional rights.

This point would make a highly substantial problem if the admitted certificate had any substantial bearing on the case. There is a measure of discretion in a court to reopen a case for additional testimony, as Moore puts it, "in the interest of fairness and substantial justice," 6 Moore, Federal Practice ¶ 59.04 (13), and see, as to the diversity issue, our opinion in Seideman v. Hamilton, 1960, 275 F.2d 224. But certainly the reopening should not be ex parte on motion of one of the litigants. We do think,

however, that, in the circumstances of this case, the erroneous procedure followed does not require us to reverse the judgment entered since every relevant fact contained in the certificate had already been admitted by the defendant.

The reason for our conclusion on this point follows. The plaintiff, in her complaint, alleged diversity of citizenship saying that she was a citizen of Pennsylvania and that the defendant was a New Jersey corporation.[1] In the defendant's answer two paragraphs of the plaintiff's complaint were admitted; others were denied because of lack of knowledge and the rest were met by a general denial.[2] One of the paragraphs subject to this general denial was the one in which the diversity of citizenship was alleged, paragraph 1.[3] Defendant, however, did not specifically deny that it was a New Jersey corporation.[4] We do not think that the able and experienced lawyer for the defendant should be put in the position of having to urge that his general denial applied to the corporate citizenship of his client. Fed.R.Civ.P. 11 provides in part that "the signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; * * *. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action."

We cannot for a moment believe that defendant's counsel was denying in good faith that his client was a New Jersey corporation.[5] We think the other allegation contained in the complaint.

---

1. Paragraph 1 of the eight-paragraph complaint reads as follows:
"1. The jurisdiction of this Court is founded on the diversity of citizenship of the parties. The plaintiff, Eleanor G. Biggs, is a citizen of the Commonwealth of Pennsylvania, City and County of Philadelphia, and resides at 1231 North Conestoga Street. The defendant, Public Service Bus Company, is a New Jersey Corporation, and is doing business in the City of Philadelphia, Commonwealth of Pennsylvania, at 13th and Filbert Streets; the amount in issue is in excess of Three Thousand Dollars ($3,-000.00), exclusive of costs and interest."
Paragraph 2 alleged defendant's ownership of the bus involved and paragraph 3 contained allegations relating to the master-servant relationship of the defendant and the bus driver. Paragraph 4 alleged the happening of the accident and the negligence of the bus driver. Paragraphs 5 through 8 dealt with damages.

2. The complete answer reads as follows:
"Answer.
"First Defense.
"The complaint fails to state a claim against defendant upon which relief can be granted.
"Second Defense.
"Defendant admits the allegations contained in paragraphs 2 and 3 of the complaint; alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 5, 6, 7 and 8 of the complaint; and denies each and every other allegation contained in the complaint.
"Third Defense.
"The defendant specifically denies that the amount in issue is in excess of $3,000.
"Fourth Defense.
"The accident was caused by the negligence of the plaintiff, Eleanor G. Biggs, and the negligence of Robert Washington, 5526 W. Master Street, Philadelphia, Pennsylvania.

"Fifth Defense.
"There is no such company as the Public Service Bus Company, and the proper name of the defendant is The Public Service Coordinated Transport."
The fifth defense was overcome by stipulation of the parties permitting the name of the defendant in this case to be changed to Public Service Coordinated Transport.

3. The other paragraph subject to the general denial was paragraph 4.

4. But it did specifically deny that the amount in controversy was in excess of $3,000. See note 2 supra.

5. A series of opinions handed down by Judge Kirkpatrick about twenty years ago makes it perfectly clear that a denial stating lack of "knowledge or information sufficient to form a belief as to the truth" of the averment would be insufficient to serve as a denial of an allegation such as this. See Nieman v. Long, D.C.E.D.Pa.1939, 31 F.Supp. 30, 31; Nieman v. Bethlehem Nat. Bank, D.C.E.D. Pa.1939, 32 F.Supp. 436, affirmed per curiam 3 Cir., 1940, 113 F.2d 717; Squire v. Levan, D.C.E.D.Pa.1940, 32 F.Supp.

only fair interpretation of the pleading in this case is that the denial does not run to the allegation of defendant's citizenship. Therefore, that allegation must be deemed to be admitted. Fed.R.Civ.P. 8 (d). Thus, the certificate added nothing to the case and we can ignore it.

■■ The defendant complains that there was no proof of its negligence and that the driver, Washington, was conclusively guilty of individual negligence. We do not need to get into all of this. Whether defendant's negligence was proved and whether Washington was negligent or not all depends upon whose version of the facts is believed. This is clearly a jury matter. If the jury accepts the statement of one witness over another statement of even more than one witness it is no ground for us to interfere with its conclusion unless it is so inherently improbable that no reasonable man could take it. That is not the case here. The testimony of witnesses, as is usual in these cases, was in some conflict. The scene of the accident is one in which there is a great deal of traffic. But the jury was informed of all the facts about the situs through charts and the witnesses worked with the charts in presenting their testimony. Each side brought out its point of view in competent fashion. The jury was obviously quite alert. Jurors asked questions from time to time dealing with the testimony of a given witness. We do not think there was confusion. And we do think that the jury had a thorough picture of the problem which it had to resolve.

Complaint is made that the defendant did not get a fair trial because of the attitude of the trial judge. He is alleged to have favored the plaintiff, and discriminated against the defendant. Instances were cited where, in the opinion of counsel, this discrimination was shown.

■ The only way to meet this point is to examine the testimony, not depending upon sentences plucked out here and there. This we have done. Our conclusion is not in agreement with the defendant. We think the trial judge was impartial and that he made every effort to be fair. He did stop counsel sometimes from interrupting a witness, directing that the witness be allowed to finish his sentence before objection was received. But he did this regardless of whose witness was being examined or who was doing the examining. There is one point in the record where counsel objected to a look or gesture on the part of the trial judge. The attorney for the plaintiff met this by denying that the trial judge looked or gestured in a way to show partiality. Until we get motion picture or video-tape recordings of trials it is not easy to see how an appellate court can do anything about this kind of an objection. We are necessarily confined in our judgment to what the trial judge says and not the way he looks or gestures when he says it. This trial judge was apparently very anxious to be fair and in fact could have been more strict with the lawyers trying the case than he actually was. All of this is a very clear conclusion from a reading of what went on at the trial. It is not to be expected that losing counsel should take the same view of it.

The appellant attacks the charge to the jury made by the trial judge. He complains that it was prejudicial in favor of the plaintiff and that it was inaccurate and confusing to the jury.

The best way to appraise this point is to examine the charge, not in isolated sentences or paragraphs but in the large.

437; Reed v. Turner, D.C.E.D.Pa.1941, 2 F.R.D. 12; Reed v. Hickey, D.C.E.D. Pa.1941, 2 F.R.D. 92; Ice Plant Equipment Co. v. Martocello, D.C.E.D.Pa.1941, 43 F.Supp. 281. See also Mesirow v. Duggan, 8 Cir., 240 F.2d 751, 756, certiorari denied sub nom. Duggan v. Green, 1957, 355 U.S. 864, 78 S.Ct. 93, 2 L.Ed. 2d 70.

A similar rationale would appear to be appropriate in determining the meaning of the general denial in the case at bar.

Was it an instruction to the jury to help that body see the problems it had to answer and give it the necessary instruction about law points to enable it to act correctly?

 The charge contains some unnecessary and irrelevant comment. But an examination of it shows that this was not put in such a way as to divert the attention of the jury from the task it had. The trial judge summed up the jury's problem in the first five minutes of the charge. He pointed out that the case was based on the plaintiff's claim that the defendant was negligent and that the defendant denied its negligence and said if there was any negligence it was that of the driver Washington. "Now, there you have the dispute," he said. Then he told the jury that it was its function to make up its mind about the conflicting stories of the witnesses. He emphasized that this was for the jury and not for him. He told the jurors that differences in testimony did not require them to think that anybody had perjured himself and that observation and memories were not the same for all people. He defined negligence, told them the elements of damages should they find in favor of the plaintiff and ended up by putting to them definite questions. One required the jury to answer whether the bus company was negligent and whether that negligence was a substantial factor in causing the plaintiff's injuries. The second was whether the driver of plaintiff's car, Washington, was negligent and whether his negligence was a substantial factor in causing the plaintiff's injuries. The jury answered the first question in favor of the plaintiff and the second in favor of Washington. It assessed the damages at $15,000.

There was a great deal of objection made by defense counsel to the court at the time of his charge. But it is our conclusion that the case went to a jury which had a fair understanding of its problems and came back with considered and categorical answers and with a verdict which was not excessive.

Other points noted by the defendant have been examined but do not require further discussion.

The judgment of the district court will be affirmed.